## AFFIDAVIT

I, Richard Weinisch, being sworn, depose and state as follows:

1.      I am assigned to the Detective Service Bureau – Narcotics Unit of the Burlington Police Department as a Detective.  I have been employed by the Burlington Police Department since February 2013 and I have been a full-time certified Police Officer since August 2008.  In connection with my duties and responsibilities, I have received extensive training, both formal and informal, in the field of narcotics investigation and enforcement.  I have also participated in investigations relating specifically to the possession and distribution of cocaine, heroin, and fentanyl, the types of drugs being distributed by the person under investigation here.  I have also participated in various aspects of investigatory work, including undercover surveillance and undercover narcotics purchases.  I have participated in several narcotics-related arrests and the execution of many narcotics-related search warrants.  I have written affidavits in support of search and arrest warrants, and I frequently utilize the services of informants and other confidential sources of information.

2.      This affidavit is submitted to establish probable cause to believe that on or about May 30, 2019, Kieta ARMSTEAD knowingly and intentionally distributed heroin, a schedule I controlled substance, and fentanyl, a schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(C).

3.      I am familiar with the facts and circumstances of this investigation based on my personal participation in this case, my discussion with other law enforcement agents, my discussions with witnesses involved in the investigation, and my review of records, recordings, and reports relating to the investigation.

1

4.      Because this affidavit is being submitted for the limited purpose of establishing

probable cause, I have not included details of every aspect of the investigation nor have I

included all the details of other investigations known to me.

## PROBABLE CAUSE

### Introduction to Investigation and Cooperating Subject

5.      On a known date during the month of May of 2019, Burlington Police Department

Detective Philip Tremblay and I spoke with a subject who was interested in providing

information and cooperating with law enforcement.  For ease of reading and confidentiality

purposes, this cooperating subject will be referred to using the pseudonym "CS" as well as the

pronoun "it."  The CS was advised that if it provides any false information to law enforcement

that it could face criminal charges.  The CS entered into a Cooperating Subject agreement with

the Burlington Police Department and agreed to provide active cooperation in exchange for

monetary compensation.[1]  The CS has worked with law enforcement to include the Burlington

Police Department in the past, and it has provided reliable information and made several

controlled drug purchases that resulted in the arrests and prosecutions of multiple individuals for

drug offenses in Vermont.

6.      In May of 2019, the CS told Detective Tremblay and I that it was in a position to

purchase "crack" cocaine and/or heroin from a male it knew as "B."  The CS described "B" as being

---

[1] In the past 10 years, the CS has the following criminal convictions that include Conditions of Release violation, Probation violation, Conspiracy to Distribute Narcotics, and Conspiracy to Distribute Heroin and Fentanyl; Petit Larceny x3, Escape Custody-Furlough x2, Disorderly Conduct-Noise, Unlawful Mischief, Resisting Arrest, Violation of Conditions of Release, Burglary, and Violation of Probation. Prior to 2009, the CS has the following criminal convictions which include Cocaine sale, Vehicle Operation-Careless or Negligent, Resisting Arrest, Sexual Assault-Victim <16 Yrs, Probation violation (x2), False Pretenses or False Tokens < $25 attempt, Alcohol-Sale/Furnish to Minor, Simple Assault (x2), Vehicle Operation-Without Owner Consent, Littering/Dumping, Petit Larceny, Forgery-Utter/Publish an Instrument, and Unlawful Mischief.

a tall black male with a beard.  The CS first provided a phone number of 347-852-0799 for "B," but advised that "B" changes his number each trip that he makes to Vermont to sell drugs.

## Controlled Purchase #1

7.      On a known date during the week of May 12, 2019, Detective Tremblay, Winooski Police Department Detective Nease, and I met the CS at the Burlington Police Department.  The CS advised it was in a position to purchase heroin from "B."  The CS and its property were searched prior to the drug transaction at which time it was found to have no illegal drugs, paraphernalia, or large sums of money.  The CS was provided enough serialized U.S. currency to complete the anticipated drug transaction.

8.      While in the presence of investigators, the CS contacted "B" via phone to the phone number 929-286-6583 to arrange the drug transaction.  "B" agreed to meet the CS at a known location in Winooski, VT.  Investigators established surveillance of the anticipated area where the drug transaction was expected to be conducted.

9.      The CS was kept under surveillance by Burlington Police Detective Stoughton and me as it entered the area of the anticipated meet location of the controlled purchase.

10.     Investigators observed the CS arrive in the area of the meet location.  The physical meeting between the CS and "B" was observed by investigators and video recorded.  The CS was kept under visual surveillance following the controlled purchase, until the CS met back up with Detective Nease.  Upon meeting with Detective Tremblay and me, I took possession of the suspected heroin that the CS had just purchased from "B."

11.     The CS and its property were searched after the controlled purchase.  No illegal drugs, paraphernalia, or large sums of money were found.

12.     Following the controlled purchase, I conducted a sworn audio-recorded statement with the CS regarding the drug transaction with "B." The CS advised that it met with "B" and that it physically exchanged the known amount of provided U.S. currency for the heroin from "B."

13.     Back at the Burlington Police Department, I photographed and field-tested the suspected heroin with a SIRCHIE NARK II heroin and fentanyl field-test kit, which tested presumptive positive for fentanyl. The heroin/fentanyl was being sold in knotted bag corners as a "bundle" of heroin. A "bundle" of heroin typical consists of 10 wax paper folds ("bags") when sold in that form. The heroin/fentanyl was tagged into evidence at the Burlington Police Department, tag number 64668.

**Controlled Purchase #2**

14.     On a known date during the week of May 19, 2019, Detective Tremblay, Detective Nease, and I met with the CS at the Burlington Police Department. The CS advised it was in a position to purchase crack cocaine and heroin from "B." The CS and its property were searched prior to the drug transaction at which time it was found to have no illegal drugs, paraphernalia, or large sums of money. The CS was provided enough serialized U.S. currency to complete the anticipated drug transaction.

15.     While in the presence of investigators, the CS contacted "B" via phone to the phone number 929-280-0802 to arrange the drug transaction. "B" agreed to meet the CS at a known location in Burlington, VT. Investigators established surveillance of the anticipated area where the drug transaction was expected to be conducted.

16.     Burlington Police Sergeant Merchand and I kept the CS under surveillance as it traveled to the area of the anticipated meet location of the controlled purchase.

17.     Investigators observed the CS arrive in the area of the meet location. The physical meeting between the CS and "B" was observed by investigators and video recorded. The CS was kept under visual surveillance following the controlled purchase, until meeting back up with Detective Nease. Upon meeting with Detective Tremblay and me, I took possession of the suspected heroin and crack cocaine that the CS had just purchased from "B."

18.     The CS and its property were searched after the controlled purchase, and the CS was found to have no illegal drugs, paraphernalia, or large sums of money.

19.     Following the controlled purchase, I conducted a sworn audio-recorded statement with the CS in regards to the drug transaction with "B." The CS advised that it met with "B" and it physically exchanged the known amount of provided U.S. currency for the heroin and crack cocaine from "B."

20.     Back at the Burlington Police Department, I photographed and field-tested the suspected heroin with a SIRCHIE NARK II heroin and fentanyl field-test kit, which tested presumptive positive for fentanyl. The heroin/fentanyl was being sold in knotted bag corners as a "bundle" of heroin. A "bundle" of heroin typical consists of 10 wax paper folds ("bags") when sold in that form. I also field-tested the suspected crack cocaine with a NARK II Cocaine ID Swipe, and it tested presumptive positive for cocaine. The heroin/fentanyl and crack cocaine were tagged into evidence at the Burlington Police Department, tag number 64784.

### Controlled Purchase #3

21.     On or about May 30, 2019, Detective Tremblay, Detective Nease, and I met with the CS at the Burlington Police Department. The CS advised it was in a position to purchase heroin from "B." The CS and its property were searched prior to the drug transaction at which

time it was found to have no illegal drugs, paraphernalia, or large sums of money. The CS was provided enough serialized U.S. currency to complete the anticipated drug transaction.

22.     While in the presence of investigators, the CS contacted "B" via text messages to the phone number 347-637-0438 to arrange the drug transaction. "B" agreed to meet the CS at a known location in Colchester, VT. Investigators established surveillance of the anticipated area where the drug transaction was expected to be conducted.

23.     The CS was kept under surveillance by Detective Nease, Sergeant Merchand, and me as it traveled to the area of the anticipated meet location of the controlled purchase.

24.     Investigators observed the CS arrive in the area of the meet location. The physical meeting between the CS and "B" was observed by investigators. The CS was monitored by me following the controlled purchase, until the CS met back up with Detective Nease. Upon meeting with the CS, Detective Nease took possession of the suspected heroin that the CS had just purchased from "B."

25.     The CS and its property were searched after the controlled purchase, and no illegal drugs, paraphernalia, or large sums of money.

26.     Following the controlled purchase, Detective Nease conducted a sworn audio-recorded statement with the CS in regards to the drug transaction with "B." The CS advised that it met with "B" and that it physically exchanged the known amount of provided U.S. currency for the suspected heroin from "B."

27.     Back at the Burlington Police Department, I photographed and field-tested the suspected heroin with a SIRCHIE NARK II heroin and fentanyl field test kit, which tested presumptive positive for fentanyl. The heroin/fentanyl was being sold in knotted bag corners as a "bundle" of heroin. A "bundle" of heroin typical consists of 10 wax paper folds ("bags") when

sold in that form.  The heroin/fentanyl was tagged into evidence at the Burlington Police

Department, tag number 64850.

### Arrest of ARMSTEAD on May 30, 2019

28.     On May 30, 2019, after the controlled purchases described above, investigators

observed "B," subsequently identified as Kieta ARMSTEAD, in the Winooski, VT area and

surveilled him.  After several short duration meetings with several different people, investigators

arrested ARMSTEAD in the Simon's convenience store parking lot on College Parkway in

Colchester, VT.

29.     ARMSTEAD was taken into custody pursuant to the drug distribution charges

described above.  At the time of his arrest, ARMSTEAD confirmed that his name was Kieta

ARMSTEAD.  Based on my investigation, I identified Kieta ARMSTEAD as the person "B"

who distributed controlled substances as described above, including distributing heroin/fentanyl

during the third controlled purchase that took place on or about May 30, 2019.

30.     An initial search incident to arrest of ARMSTEAD yielded two cellular phones

and a large amount of U.S. currency.  I later checked the serial numbers of the currency

recovered from ARMSTEAD, which revealed all of the serialized U.S. currency utilized by the

CS during the third controlled purchase from ARMSTEAD.  Excluding the serialized U.S.

currency from the controlled purchase, the currency seized from ARMSTEAD was $2,435.00

dollars.  ARMSTEAD was transported back to the Burlington Police Department.  After a more

thorough search incident to arrest at the police station, I also located a Holiday Inn key card

inside of ARMSTEAD's right sock along with his NY State Identification card bearing the name

Kieta ARMSTEAD.

## **CONCLUSION**

31.     Based on the above information, I believe that probable cause exists that on or about May 30, 2019, Kieta ARMSTEAD knowingly and intentionally distributed heroin, a schedule I controlled substance, and fentanyl, a schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(C).

Dated at Burlington, in the District of Vermont, on May 31, 2019.


Richard Weinisch
Detective, Burlington Police Department


Sworn and subscribed before me on May 31, 2019.


Hon. John M. Conroy
United States Magistrate Judge

8